UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ANGELA RENEE RODGIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 2:12-cv-342-APR |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court on the petition for judicial review filed by the *pro se* plaintiff, Angela Renee Rodgis, on August 27, 2012. For the following reasons, the decision of the Commissioner is **AFFIRMED.**

*Background*

The plaintiff, Angela Renee Rodgis, filed an application for Social Security Income Benefits on April 16, 2009, alleging that she became disabled on November 1, 2008. (Tr. 229-231) She subsequently amended her onset date to October 24, 2009. (Tr. 271) Her application initially was denied and was denied upon reconsideration. (Tr. 102-107) Rodgis requested a hearing before an administrative law judge (ALJ), and a hearing was held on January 28, 2011 before ALJ Roxanne J. Kelsey. Rodgis appeared with her lawyer and testified. (Tr. 55-88) Vocational Expert Melissa Benjamin also testified at the hearing. (Tr. 55-88) On April 13, 2011, the ALJ rendered a decision denying benefits. (Tr. 28-34) On August 21, 2012, the Appeals Council denied review of the ALJ's decision, making the ALJ's decision the final decision of the

1

Commissioner. (Tr. 7-10) Rodgis filed this action for judicial review of the final decision of the Commissioner on August 27, 2012.

At step one of the five step sequential analysis for determining whether an individual is disabled, the ALJ found that Rodgis had not engaged in substantial gainful activity since October 24, 2009, her alleged onset date. (Tr. 30) At step two, the ALJ determined that Rodgis had the following severe impairments: loss of vision in the right eye and right ear deafness. (Tr. 30) The ALJ next found that Rodgis' impairments did not meet or equal Listings 2.04 or 2.10. (Tr. 30)

The ALJ determined that Rodgis had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: "the claimant has monocular vision with no vision in the right eye and limited peripheral viewing on the right side. She also has right ear deafness but remains able to hear and understand oral instructions and communicate information." (Tr. 31) In reaching this decision, the ALJ first explained that Rodgis testified that she had loss of vision in her right eye because of a stroke. (Tr. 31) Rodgis testified that she had glaucoma in her left eye, which caused blurry vision that began in 2010. (Tr. 31) Rodgis reported getting headaches four times a week that lasted for five hours at a time. (Tr. 31) Rodgis' daughter lived with her and took her to her doctor appointments because Rodgis did not drive or use public transportation. (Tr. 31) Rodgis stopped working because her vision became worse and she missed many days of work. (Tr. 31) At the hearing, Rodgis testified that she had pain in her eyes at a level of 7 out of 10. (Tr. 31) Rodgis testified that she was scheduled to have her right eye removed and replaced with a prosthesis, but the treatment records did not reflect this. (Tr. 31)

The ALJ next summarized Rodgis' daily activities. (Tr. 31) Everyday her daughter

2

would put eye drops in her left and right eye. (Tr. 31) She took her pain medication while her daughter ran bath water for her. (Tr. 31) After eating breakfast, Rodgis would lie down in a dark room. (Tr. 31) She wore dark glasses to prevent glare from light and it was painful for her to watch television. (Tr. 31) Rodgis attended church, cleaned her bedroom, but did not cook, do laundry, or read her mail. (Tr. 31) She rarely went shopping and when she did, it was a short trip accompanied by someone. (Tr. 31) Rodgis could lift 5 or 6 pounds, stand for an hour, walk less than a mile due to lower back pain. (Tr. 32)

After summarizing the factors she must consider when determining a claimant's RFC, the ALJ explained that Rodgis had not been compliant in taking her prescribed medications, which suggested that she might not be as limited as she stated. (Tr. 32) Rodgis did not mention her left eye problems, report photosensitivity or dust problems, "along with so much else" to her doctor. (Tr. 32) For these reasons, the ALJ determined that Rodgis' testimony was not credible. (Tr. 32)

The ALJ further explained that, in July 2009, Dr. Thomas Bennett described Rodgis' vision as hand motions in the right eye and 20/20 in the left eye. (Tr. 32) Rodgis used the eye drop medication Xalatan and had been prescribed Atropine, Cosopt, and Alphagan P for her right eye. (Tr. 32) An ultrasound of her right eye showed that the retina was attached with the presence of a vitreous hemorrhage. (Tr. 32) Conservative observation was recommended. (Tr. 32) Dr. Bennett noted that Rodgis was legally blind in her right eye as of July 10, 2009. (Tr. 32) Rodgis was non-compliant with her follow up visits. (Tr. 33) As of September 2009, Dr. Bennett indicated that Rodgis could perform any activities that took her vision into account. (Tr. 33)

In July 2009, Dr. Neil Watkins stated that Rodgis had been non-compliant with eye

3

medications and was evaluated for blurred vision and spots in her left eye. (Tr. 33) She was diagnosed with macular scars of the left eye and a nuclear sclerosis cataract. (Tr. 33) The notes reflected that Rodgis still was working as a laundry attendant as of September 2010. (Tr. 33)

Subsequent notes from the Retina Associates indicated that Rodgis had right eye blindness and 20/20 vision in her left eye. (Tr. 33) On July 7, 2010, Rodgis had surgery for retinal detachment of her right eye. (Tr. 33)

Rodgis submitted treatment records after the hearing that revealed that she was deaf in the right ear. (Tr. 33) She did not assert that she had any difficulties hearing and understanding oral instruction or communicating information and was able to work as a laundry attendant despite this condition. (Tr. 33)

The ALJ concluded that based on the record as a whole, Rodgis' subjective allegations as to the disabling nature of her impairments were not supported to the extent they were inconsistent with the above stated RFC. (Tr. 33) The ALJ explained that although Rodgis' impairments were severe, they did not preclude her from completing basic work related activities. (Tr. 33) The ALJ stated that the RFC was supported by examination and evaluation reports by treating doctors, consulting doctors, and Rodgis' testimony and daily activities. (Tr. 33) Additionally, the ALJ did not find Rodgis' testimony fully credible. (Tr. 33) The ALJ reiterated that she considered the opinion evidence, the objective medical evidence, Rodgis' activities, response to treatment, use of medications, and non-compliance, and other inconsistencies. (Tr. 33)

At step four, the ALJ concluded that Rodgis could perform her past relevant work as a laundry worker. (Tr. 33) The ALJ also identified other jobs that Rodgis could perform,

4

including laundry sorter (3,000 jobs regionally), hostess (4,000 jobs regionally), and information clerk (2,500 jobs regionally). (Tr. 34) The ALJ noted that she relied on the VE's testimony to reach these conclusions. (Tr. 34)

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. 42 U.S.C. sec. 405(g) ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); **Schmidt v. Barnhart**, 395 F.3d 737, 744 (7th Cir. 2005); **Lopez ex rel Lopez v. Barnhart**, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." **Richardson v. Perales**, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 852, (1972)(*quoting* **Consolidated Edison Company v. NRLB**, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L.Ed.2d 140 (1938)); *See also* **Jens v. Barnhart**, 347 F.3d 209, 212 (7th Cir. 2003); **Sims v. Barnhart**, 309 F.3d 424, 428 (7th Cir. 2002). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. **Roddy v. Astrue,** 705 F.3d 631, 636 (7th Cir. 2013); **Rice v. Barnhart**, 384 F.3d 363, 368-369 (7th Cir. 2004); **Scott v. Barnhart**, 297 F.3d 589, 593 (7th Cir. 2002). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." **Lopez**, 336 F.3d at 539.

Supplemental insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable

5

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §423(d)(1)(A).** The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §416.920.** The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. § 416.920(b).** If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 416.920(c).** Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1.** If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. 20 C.F.R. §416.920(e). However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920(f).

Rodgis complains that the ALJ erred and that she should be declared disabled because she has no vision in her right eye and very poor vision in her left eye, which made reading

anything impossible and caused her to misjudge things and fall. Rodgis further complained that she had bad peripheral vision. She also complained that she had peripheral artery disease in her legs and struggled to walk. She attempted to walk to stay healthy, but that contributed to her back problems. She also reported high blood pressure. Rodgis urges that the combination of these impairments rendered her disabled. The court interprets Rodgis' argument as a challenge to the ALJ's step four and step five determinations.

SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of the sequential evaluation. In a section entitled, "Narrative Discussion Requirements," SSR 96-8p specifically spells out what is needed in the ALJ's RFC analysis. This section of the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted). Thus, as explained in this section of the Ruling, there is a difference between what the ALJ must contemplate and what she must articulate in her written decision. *See* **Morphew v. Apfel**, 2000 WL 682661 at *3 ("There is a distinction here [in SSR 96-8p] between what the ALJ must consider and what the ALJ must articulate in the written opinion."); **Lawson v. Apfel**, 2000 WL 683256, *2-4 (S.D.Ind. May 25, 2000) (ALJ who restricted the claimant to medium work satisfied the requirements of SSR 96-8p)("[SSR 96-8p]

7

does not require an ALJ to discuss all of a claimant's abilities on a function-by-function basis. Rather, an ALJ must explain how the evidence supports his or her conclusions about the claimant's limitations and must discuss the claimant's ability to perform sustained work activities.").

Although Rodgis now complains that she has poor vision in her left eye, the medical evidence does not support her complaint. In July 2009, she had 20/20 vision in her left eye. Although Dr. Watkins noted that Rodgis had blurred vision and spots in the left eye, on November 6, 2009, Rodgis' vision again was recorded as 20/20. Rodgis' treating physician cleared her for work, and her eye doctor stated that she could perform activities that accounted for her vision. Rodgis did not identify any evidence that supported her argument that her left vision was impaired to the extent it would prevent her from working. Rather, the record reflects that the ALJ considered Rodgis' vision in both her left and right eye and found that with her residual vision in her left eye there were jobs she could perform. In doing so, the ALJ relied on substantial evidence, and Rodgis has failed to show that this reliance was in error.

Rodgis further contends that she had peripheral artery disease that impaired her ability to walk. However, the record is devoid of any medical notes to support her complaints of peripheral artery disease. Moreover, she did not allege leg problems at her hearing and has not identified any evidence to support her claim. Absent some medical evidence to support her claim, there is no ground on which to support Rodgis' request to remand her claim. See 20 CFR 416.929(a).

At the next step, the ALJ determined that Rodgis had the residual functional capacity to perform her past relevant work, and she also identified other jobs that Rodgis could perform with

her RFC. The ALJ made this determination by relying on the testimony of the VE. Provided there is no apparent conflict between the VE's testimony and the DOT, the ALJ may rely on the VE's confirmation that the testimony is consistent with the DOT. *Weatherbee,* 649 F.3d at 570. The ALJ satisfies her duty when she questions whether the VE's answer is consistent with the DOT and receives an affirmative answer, even if the VE's response partially is based on his experience, provided there are no apparent inconsistencies that the ALJ must further resolve.

Rodgis has not identified any apparent conflict between the VE's testimony and the DOT that would warrant remand for further consideration. Rather, the ALJ was permitted to rely on the VE's testimony. In doing so, the VE was able to identify a substantial number of jobs in the national economy that Rodgis could perform with her RFC. Because the court already has concluded that the ALJ's RFC determination was not flawed, and the VE was able to identify jobs Rodgis could perform in light of her limitations that presented no apparent conflict with the DOT. The ALJ was permitted to rely on this testimony, and her decision was supported by substantial evidence. Rodgis has not identified any errors that would warrant remand.

Based on the foregoing reasons, the decision of the Commissioner is **AFFIRMED.**

ENTERED this 17th day of December, 2013

/s/ Andrew P. Rodovich
United States Magistrate Judge